# Felhaber Larson
# Fenlon & Vogt

*A Professional Association – Attorneys at Law*

MINNEAPOLIS
220 South Sixth Street : Suite 2200
Minneapolis, MN 55402-4504
612 339 6321    Fax 612 338 0535

David L. Hashmall
(612) 373-8518
Fax: (612) 339-0535
E-mail: dhashmall@felhaber.com
Reply to Minneapolis Office

ST. PAUL
444 Cedar Street : Suite 2100
St. Paul, MN 55101-2136
651 222 6321    Fax 651 222 8905

May 3, 2007

<u>**VIA EMAIL AND U.S. MAIL**</u>

Richard T. Thomson, Esq.
Lapp, Libra, Thomson, Stoebner &
   Pusch, Chartered
One Financial Plaza
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402

RE:   Berkley Risk Administrators Company LLC, et al. v.
      Wells Fargo Bank, National Association
      Court File No. 06-2804
      Our File No. 20712.003

Dear Dick:

I am in receipt of Wells Fargo Bank's ("Wells") discovery responses, and I am writing to you pursuant to Rule 37. I am available to discuss these issues on May 4, 7, 8 or 9. Please let me know what time works for you.

With regard to Wells's response to Plaintiff's First Set of Interrogatories, as to Interrogatory No. 4, Wells has failed to identify any persons with knowledge of facts relating to this matter. Wells has an obligation to provide responsive information.

With regard to Interrogatory No. 5, the objection to the disclosure of "confidential commercial information" is meritless given the fact that the Court has issued a Protective Order. This comment applies to all interrogatories in which this improper objection is made. Also, to the extent that Wells intends to respond to this interrogatory by the production of documents, please provide a privilege log with regard to any documents that have been withheld.

To the extent that the response to Interrogatory No. 5 or any other interrogatory indicates that Wells is only producing documents that it considers "relevant", this violates Wells's duty to disclose information that may lead to the discovery of admissible evidence. Once again, this point applies to each discovery request in which Wells has made this improper objection.

With regard to Interrogatory No. 10, Wells has an obligation to identify the persons who reviewed the checks or endorsements.

Richard T. Thomson, Esq.
May 3, 2007
Page 2

With regard to Interrogatory No. 12, it appears that Wells has failed to identify responsive documents. Wells has an obligation to do so.

With regard to Interrogatory No. 14, Wells has failed to answer the interrogatory. The documents produced do not provide responsive information.

With regard to Wells's response to Plaintiff's First Set of Requests for Production of Documents, as to Request No. 4, Wells's objection to the production of "confidential commercial information" is improper because there is a Protective Order. Wells's limitation of its production to "relevant" documents is improper, because the request is reasonably calculated to lead to the discovery of admissible evidence. These points apply to each response in which Wells has made these objections. Again as to each response, to the extent that Wells has withheld documents based upon any claim of attorney-client privilege or attorney-client work product, please provide privilege logs setting forth the documents withheld and the basis upon which they have been withheld.

Also, with regard to Request No. 4, and all other responses in which it appears, Wells's reference to "documents that it finds with good-faith efforts in its possession" is ambiguous. Please describe the extent to which that reference is intended to relieve Wells of its obligation to diligently search for documents.

With regard to Request No. 5, Wells's limitation in its response to "the checks identified in Exhibit A to the First Amended Complaint" is improper. The request is not so limited, and the request for deposit records, checks and related documents beyond those listed in Exhibit A is reasonably calculated to lead to the discovery of admissible evidence.

With regard to Request No. 6, and all other responses in which this objection is made, the objection to the request as "burdensome" and "not relevant" is improper. Wells has an obligation to produce the requested documents. Further, the requested documents have not been produced.

Also, it appears that responsive documents have not been produced with regard to our Request No. 7.

With regard to Request No. 15, the response is improperly limited to documents relating to the checks identified in Exhibit A to the First Amended Complaint. The Request is broader than that and is reasonably calculated to lead to the discovery of admissible evidence.

With regard to Plaintiff's Second Set of Interrogatories and Document Requests, Wells's failure to provide responsive information with regard to Interrogatory No. 26 is improper. The interrogatory is reasonably calculated to lead to the discovery of admissible evidence, and none of the stated objections are legally valid.

Richard T. Thomson, Esq.
May 3, 2007
Page 3

With regard to Document Request No. 17, Wells's failure to produce the requested documents is also improper. Interrogatory No. 26 and Document Request No. 17 are relevant to Wells's practice for handling the type of instruments at issue in the case.

With regard to all Interrogatories and Document Requests, to the extent that Wells has withheld documents based upon its improper objections to those documents, the documents should now be produced.

Please call me to discuss these matters. Thank you.

Very truly yours,

David L. Hashmall

DLH/jme

cc:   Ryan A. Olson, Esq.

**LAPP, LIBRA, THOMSON, STOEBNER & PUSCH**
CHARTERED
ATTORNEYS AT LAW

RICHARD T. THOMSON
(612) 343-4968
rthomson@lapplibra.com

ONE FINANCIAL PLAZA, SUITE 2500
120 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402

TELEPHONE: (612) 338-5815
FAX: (612) 338-6651

May 11, 2007

Mr. David L. Hashmall
Felhaber, Larson, Fenlon & Vogt, PA
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504

Re:   *Berkley Risk Administrators Company, LLC, Rasmussen Agency, Inc. (d/b/a Berkley Risk Managers), All American Agency Facilities, Inc., and Federal Insurance Company, as assignee and subrogor vs. Wells Fargo Bank, N.A.*
USDC File No. 0:06-cv-02804.

Dear David:

Thank you for your letter of May 3, 2007, setting forth pursuant to Rule 37 your concerns with Wells Fargo's discovery responses. Your letter invites an oral discussion of those concerns, but I believe the following written response may be a helpful prelude to that discussion.

Interrogatory No. 4. This interrogatory asks for the identity of persons who may have knowledge of facts relating to this matter. Your letter mistakenly states that Wells Fargo "has failed to identify any persons with knowledge ... ." In fact, Wells Fargo's answer to Interrogatory No. 4 identified Steven J. Davis and representatives of Plaintiffs as persons who possibly might have knowledge. I am not aware that any Wells Fargo employee, past or present, has knowledge concerning any of the checks that form the subject matter of this litigation. This should not be surprising. If you are looking for persons with knowledge about other subjects, please let me know.

Interrogatory No. 5. This interrogatory asks for a description of Wells Fargo's policies and procedures "concerning or relating to" various topics. Your letter asserts, first, that Wells Fargo's objection that the interrogatory calls for disclosure of confidential commercial information is meritless because the Court has issued a Protective Order. Wells Fargo's answer to Interrogatory No. 5, however, did agree to produce certain documents "subject to the protective order." Given Wells Fargo's agreement to produce those documents subject to the protective order, I don't believe it was improper for Wells Fargo's answer to preserve Wells Fargo's concerns about the confidentiality of its commercial information. In any event, because of the protective order, the documents Wells Fargo has produced in response to Interrogatory No. 5 are neither diminished nor altered by the objection. I do not believe, therefore, that the issue you raise is of further concern.

EXHIBIT H

**LAPP, LIBRA, THOMSON, STOEBNER & PUSCH**
**CHARTERED**

May 11, 2007
Page 2

Your letter also requests a privilege log with regard to any documents that have been withheld in Wells Fargo's response to Interrogatory No. 5. I am not aware of any documents that have been withheld. I believe the issue of a privilege log, therefore, should not be of further concern.

Your letter asserts that Wells Fargo's statement that it will produce "relevant" documents violates Wells Fargo's duty to disclose information that may lead to the discovery of admissible evidence. Whether or not my choice of the word "relevant" was inartful, the intent of Wells Fargo's answer is not to deprive you of information that is reasonably calculated to lead to the discovery of admissible evidence. Rather, because the interrogatory asks for materials "concerning or relating to" various topics, some judgment may be required in responding, and Wells Fargo's use of the word "relevant" indicates simply that the documents Wells Fargo will produce will be "relevant" – i.e., "concerning or relating to" those topics. Wells Fargo's intent is to produce documents sufficient to answer the interrogatory without burdening either you or Wells Fargo with the production of material that is either repetitive, irrelevant, or not reasonably calculated to lead to the discovery of admissible evidence.

Interrogatory No. 10. This interrogatory asks Wells Fargo to identify the persons who reviewed the checks and/or endorsements of the checks identified in Exhibit A to the First Amended Complaint. Wells Fargo answered by setting forth certain objections and stating it has not identified, and may not be able to identify, those persons. Your letter asserts that "Wells Fargo has an obligation to identify the persons who reviewed the checks or endorsements."

To determine whether it is possible to identify such persons, it is necessary, first, to review the checks identified in Exhibit A. You produced copies of those checks on April 17, 2007. Thereafter, we undertook the process of trying to identify the persons, if any, who reviewed the checks and/or endorsements of the checks identified in Exhibit A. To date, we have been able to determine that, with perhaps 10 exceptions, it is not possible to identify any persons who reviewed the checks and/or endorsements of the checks identified in Exhibit A. Wells Fargo is investigating those approximately 10 possible exceptions now, and I expect to learn more in about two weeks.

Interrogatory No. 12. This interrogatory asks Wells Fargo to identify documents relating to the training of employees regarding various topics. Wells Fargo answered by setting forth certain objections and stating that it would produce "relevant, non-privileged, non-work-product documents in its possession sufficient to respond to this interrogatory, if any such exist." Your letter states, "[w]ith regard to Interrogatory No. 12, it appears that Wells [Fargo] has failed to identify responsive documents. Wells [Fargo] has an obligation to do so." Contrary to your statement, Wells Fargo has produced responsive documents. *See* WF 0818 –WF 01825. We are in the process of determining whether additional possible documents from earlier time periods are still in existence.

**LAPP, LIBRA, THOMSON, STOEBNER & PUSCH**
  CHARTERED

May 11, 2007
Page 3

>   Interrogatory No. 14. This interrogatory asks Wells Fargo to "[d]escribe in detail each step taken by Defendant's agents or employees to determine whether the checks identified in Exhibit A to the First Amended Complaint could properly be deposited into the JAML Investment account or any other JAML account." Wells Fargo answered by referring you to the documents it has produced. Your letter asserts, "[t]he documents produced do not provide responsive information." But the documents produced outline the guidelines for taking checks for deposit. *See* WF 01818 – WF 01825. Again, we are in the process of determining whether additional possible documents from earlier time periods are still in existence.

>   Request No. 4. This letter already has addressed your concerns relating to Wells Fargo's objection to the production of "confidential commercial information," Wells Fargo's statement that it will produce "relevant" documents, and a privilege log.

>   Your letter also asks whether Wells Fargo's reference to "documents that it finds with good-faith efforts in its possession" is intended to relieve Wells Fargo of "its obligation to diligently search for documents." The reference is not intended to relieve Wells Fargo of any obligation it has in discovery.

>   Request No. 5. This request asks Wells Fargo to produce complete copies of deposit tickets/slips and related checks deposited into Plaintiffs' bank account(s) with Wells Fargo between July 1996 and September 2004. In response, Wells Fargo offered to produce such documentation (to the extent Wells Fargo has it) concerning the checks identified in Exhibit A to the First Amended Complaint. Your letter rejects this offer and insists upon production of such documentation concerning any check deposited into Plaintiffs' bank accounts with Wells Fargo. You state that discovery of such additional documents is "reasonably calculated to lead to the discovery of admissible evidence."

>   I do not understand how production of such documentation is reasonably calculated to lead to the discovery of admissible evidence, and I therefore ask you to explain that to me. In addition, I reiterate yet again Wells Fargo's request for an identification of all the account numbers at issue, without which Wells Fargo could not locate the items in any event. Further, it is my understanding that Wells Fargo charges $5 per item to retrieve such items, plus $25 per hour search time. Please tell me whether your clients will agree to pay this amount per item. Also, Wells Fargo's records do not reach back in time as far as you have asked to go.

>   Request No. 6. This request asks Wells Fargo to produce guidelines, etc., relating to the review and consideration of endorsements or signatures on checks or instruments. In response, Wells Fargo stated that it "will produce any relevant, non-privileged non-work product, responsive documents in its possession." Your letter asserts that "the requested documents have not been produced." Your assertion is mistaken. Please *see* WF 01818-WF01825. We are in the process of determining whether additional possible documents from earlier time periods are still in existence.

**LAPP, LIBRA, THOMSON, STOEBNER & PUSCH**
  **CHARTERED**

May 11, 2007
Page 4

     Request No. 7. This request asks Wells Fargo to produce guidelines, policies, procedures, or other documents "relating to the recrediting of accounts for the payment by [Wells Fargo] of forged, stolen, or unauthorized checks or instruments." Your letter states that responsive documents have not been produced. My understanding is that there are no such guidelines, policies, procedures, or other documents. Please *see* page 1 of Defendant Wells Fargo Bank's Response To Plaintiffs' First Set Of Requests For Production Of Documents.

     Request No. 15. This request asks for "all documents ... relating to Plaintiffs' accounts with [Wells Fargo] and all accounts maintained by JAML or Steve J. Davis with [Wells Fargo]." Wells Fargo objected on several grounds, including that the request was in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In your letter, you assert that the request is reasonably calculated to lead to the discovery of admissible evidence. You do not, however, explain how that is so. I ask that you do so, because it seems to me that the request does not satisfy the Rule 26 standard.

     Even if the request were reasonably calculated to lead to the discovery of admissible evidence, Wells Fargo also objected because the request "fails to identify the accounts of Plaintiffs, JAML, or Steven J. Davis with particularity sufficient to enable Wells Fargo to identify, or know that it has identified, all such accounts and/or documents." You still have not identified all those accounts for us, making it difficult or impossible to find any documents.

     Further, please inform me whether Plaintiffs are willing to pay Wells Fargo's normal charges for retrieving such documents. Also, as you know, Wells Fargo's documents may not reach back for the entirety of such accounts.

     Interrogatory No. 26 and Request No. 17. These discovery requests ask Wells Fargo to identify, and produce, "each check or instrument with any unauthorized, invalid, forged or improper signature or endorsement, or other irregularity, that [Wells Fargo] collected, paid, or processed between July 1, 1996, and August 30, 2004, with regard to which Defendant made any account adjustment, credit, payment, or refund in favor of to, or on behalf of its customer, account holder, or any other person, and for each such check or instrument, identify the action taken and the reason for said action by [Wells Fargo]." Wells Fargo objected on numerous grounds, and I believe all of those objections are proper.

     One of Wells Fargo's objections is that the interrogatory is "impossible to answer." If you disagree, please inform me how you believe Wells Fargo could go about determining whether any such checks exist and, if they do, identifying such checks throughout the Wells Fargo system for the more-than-eight-year period demanded in your discovery requests.

     I look forward to your early response to this letter in hopes that we can resolve this matter without the necessity of a motion.

LAPP, LIBRA, THOMSON, STOEBNER & PUSCH
   CHARTERED

May 11, 2007
Page 5

                        Very truly yours,

                        Richard T. Thomson

RTT/jlp
06-269

# Felhaber Larson
# Fenlon & Vogt

*A Professional Association – Attorneys at Law*

MINNEAPOLIS
220 South Sixth Street | Suite 2200
Minneapolis, MN 55402-4504
612 339 6321 : Fax 612 338 0535

David L. Hashmall
(612) 373-8518
Fax: (612) 339-0535
E-mail: dhashmall@felhaber.com
Reply to Minneapolis Office

ST. PAUL
444 Cedar Street | Suite 2100
St. Paul, MN 55101-2136
651 222 6321 : Fax 651 222 8905

May 16, 2007

**VIA U.S. MAIL & E-MAIL**

Richard T. Thomsom, Esq.
Lapp, Libra, Thomson, Stoebner &
   Pusch, Chartered
One Financial Plaza
120 South Sixth Street, Suite 2500
Minneapolis, MN 55402

RE:   **Federal Insurance Company, et al. v. Wells Fargo Bank National Association, et al.**
      **Court File No. 27-CV-06-11831**
      **Our File No. 20712.003**

Dear Mr. Thomson:

      Thank you for your letter of May 14, 2007 responding to my letter of March 30, 2007 regarding the deficiencies in Wells Fargo Bank's ("Wells"), discovery responses. With regard to Interrogatory No. 4, Wells has unreasonably misconstrued the Interrogatory as limited to persons with knowledge concerning "any of the checks". The Interrogatory is plainly more broadly stated and requires the identification of any witnesses with knowledge of the facts and matters relating to the allegations or defenses made in any of the pleadings. Also, your letter references what you are "aware" of. But, the issue is not what you are aware of, but what information Wells has.

      With regard to Interrogatory No. 5, you indicate you are "not aware of any documents that have been withheld." The question is, have any documents been withheld, including, for example, by in-house counsel or other personnel at Wells. While your response is unclear, it would appear very unlikely that the limited documents produced to-date reflect all of Wells' policies and procedures relating to the deposit, payment, negotiation and other handling of forged, altered or unauthorized checks or instruments.

      Finally, although your letter seeks to explain Wells' objection based upon relevancy, your letter then persists in indicating that Wells is not producing "irrelevant" material. That is not the correct standard.

      With regard to Interrogatory No. 10, the checks at issue are identified in Exhibit A which is attached to the Complaint. Wells, therefore, has known of the checks at issue since the inception of this matter in June 2006. Yet, Wells has failed to identify person with knowledge regarding the processing of those checks. This is unsatisfactory.

MPLS-Word 165490.1

www.felhaber.com

**EXHIBIT**
I

Richard T. Thomsom, Esq.
May 16, 2007
Page 2

With regard to Interrogatory No. 12, you indicate that Wells is "in the process of determining whether additional documents" are in existence. Any responsive documents must be produced.

With regard to Interrogatory No. 14, again, you indicate that Wells is in the process of determining whether there are additional responsive documents. Such documents must be produced.

With regard to Request No. 5, you referenced an "offer". The discovery rules do not require Wells to "offer", but to produce. In any case, your response does not reference any offer. Also, the request is reasonably calculated to lead to the discovery of admissible evidence because it will show how checks that were properly submitted for deposit were endorsed and show how the bank handled such deposits.

With regard to Request No. 6, you state that Wells is determining whether there are additional responsive documents. Wells must produce those documents.

With regard to Request No. 7, you reference your understanding that there are no responsive guidelines. Of course, apart from "your understanding", any responsive documents must be produced.

With regard to Request No. 15, you indicate that the request "fails to identify the accounts of Plaintiffs, JAML or Stephen J. Davis". But, the request identifies those account holders, and it should be easy for Wells to locate those accounts. The request is reasonably calculated to lead to admissible evidence because it will discover the Wells' knowledge of the holder of the accounts, and discover the facts relating to the opening and maintenance of the accounts.

With regard to Interrogatory No. 26, Wells claims that it is "impossible to answer" the interrogatory which asks Wells to identify forged or irregular instruments for which Wells has credited its customers. Of course, Wells should be able to determine when it has credited its customers for such instruments and respond to the Interrogatory and accompanying Request No. 17.

In order to further attempt to resolve these issues, please call me after you have reviewed this letter.

Thank you for your attention to this matter.

Very truly yours,

David L. Hashmall

DLH/sjb

MPLS-Word 165490.1

Slip Copy, 2006 WL 2670038 (D.Minn.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
3M INNOVATIVE PROPERTIES COMPANY and 3M Company, Plaintiff,
v.
TOMAR ELECTRONICS, Defendant.
Civil No. 05-756(MJD/AJB).
Sept. 18, 2006.

EXHIBIT 5

David J.F. Gross, James W. Poradek, Timothy E. Grimsrud, Faegre & Benson LLP, Minneapolis, MN, Robert J. Crawford, Crawford Maunu PLLC, St Paul, MN, for Plaintiff.
Erin R. Schulte, Mark V. Steffenson, Henningson & Snoxell, LTD, Maple Grove, MN, Thomas G. Watkins, III, Phoenix, AZ, for Defendant.

ORDER

MICHAEL J. DAVIS, District Court.

*1 The above-entitled matter comes before the Court upon Defendant's objections to the Order and Recommendations of United States Magistrate Judge Arthur J. Boylan dated July 21, 2006 in which Plaintiff's Motions for Sanctions was granted. Defendant asserts that the Order and Recommendation of Magistrate Boylan are based on a number of erroneous findings. Defendant also objects to the recommended attorney fee and quantification procedures on the basis that it conflicts with controlling precedent of the United States Supreme Court.

The Court must modify or set aside any portion of the Magistrate Judge's Order found to be clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); Local Rule 72.2(a). Based on a review of the record and the submissions of the parties, the Court concludes that the Magistrate Judge's Order and Recommendations are neither clearly erroneous or contrary to law.

IT IS HEREBY ORDERED that the Order and Recommendation dated July 21, 2006 is AFFIRMED.

ARTHUR J. BOYLAN, Magistrate Judge.

**ORDER AND RECOMMENDATIONS ON PLAINTIFFS' MOTION FOR SANCTIONS**

This matter is before the Court, United States Magistrate Judge Arthur J. Boylan, on Plaintiffs' Motion for Sanctions. A hearing was held on July 7, 2006, in Courtroom # 5 of the United States District Court for the District of Minnesota, 180 East Fifth Street, St. Paul, MN 55101. David J.F. Gross, Esq., James W. Poradek, Esq., and Timothy E. Grimsrud, Esq., appeared for and represented the Plaintiffs; 3M Innovative Properties Company and 3M Company. Thomas G. Watkins, III, Esq., telephonically appeared for and represented the Defendant, Tomar Electronics, Inc. Local counsel was not present for Tomar.

After reviewing the file and documents contained therein, along with the memoranda and arguments of counsel, and based on the memorandum below,

**A. IT IS HEREBY ORDERED** that Plaintiffs' Motion for Sanctions [Docket No. 43] **is GRANTED** as follows:

1. The court recommends [FN1] directing a factual finding that Tomar is aware of the end users of its STROBECOM II products at issue and has knowledge of how the end user is using its product.

> FN1. Plaintiffs' motion for sanctions is clearly a non-dispositive motion, yet the envisioned relief clearly includes evidentiary issues for the trial judge. As such, the undersigned Magistrate Judge presents its evidentiary sanctions as a recommendation to the district court.

2. The court further recommends that the jury instructions shall include an instruction that allows the jury to give a

negative inference regarding Tomar's alleged inducement to the fact that Tomar willfully withheld the names of the end users of its STROBECOM II system.

3. The court further recommends that the jury instructions shall include an adverse inference instruction, with respect to the email and other documents destroyed or withheld by Tomar, that these documents support 3M's claims and are unfavorable to Tomar's defenses.

4. For reasons discussed in the memorandum below, Scott Sikora is not allowed to attend the deposition of any Tomar witness or any third party.

5. 3M is granted five additional depositions over and above the original number. No objections shall be sustained with regards to a person having been previously deposed or a subject matter having been previously discussed.

*2 6. 3M is entitled to conduct further discovery with respect to Tomar's product development project. Information regarding this project shall be protected by the designation "Confidential-Outside Attorneys Eyes Only."

7. All future depositions shall take place in the District of Minnesota and Tomar's local counsel shall be present at every deposition.

8. Tomar shall make deposition witnesses available within the next 45 days.

9. Tomar shall reimburse 3M for reasonable attorney fees and costs associated with bringing this motion for sanctions. 3M shall submit an affidavit to the Court within ten days from this order outlining its costs and attorney fees arising from bringing its motion before the court.

B. The court **FURTHER ORDERS THAT** Tomar's request for a special designation of a "top secret" category under the protective order is denied. The Court finds that there is sufficient protection under the "attorney-eyes only" designation for Tomar's intellectual property rights protected by trade secret. In addition, Tomar's request that the Court impose a January 1, 2005, time limit on the scope of discovery is **DENIED.** The Court finds that documentary evidence prior to January 1, 2005, is relevant to 3M's claims of infringement and inducement and discovery of information prior to January 1, 2005, may lead to evidence that is admissible at trial.

C. The Court notes that Tomar continues to be under the obligation imposed by FED.R.CIV.P. 26(e) to supplement discovery responses as appropriate and is also under the obligation to comply with this court's February 10, 2006, discovery order. Failure to abide by this Court's rulings, the Federal Rules of Civil Procedure, or any further discovery abuse, may result in further sanctions, including a recommendation by this Court to the district court that a default judgment be issued against Tomar.

**MEMORANDUM**

**I. BACKGROUND**

Plaintiffs 3M Innovative Properties Company and 3M Company (collectively 3M) have brought a patent infringement case against Tomar Electronics, Inc. (Tomar). 3M alleges, *inter alia,* that traffic control systems manufactured and sold by Tomar infringe patent rights held by 3M. In addition, 3M alleges that Tomar has induced others to infringe the 3M patent rights.

On January 17, 2006, a hearing was held before the Court regarding 3M's motion to compel. On February 10, 2006, this Court issued an order granting 3M's motion and instructing Tomar to fully respond to several interrogatories and document requests to which Tomar had inadequately responded. The Court expressly overruled all of Tomar's objections, including Tomar's objections that the discovery requests were irrelevant, burdensome, and overly broad. 3M has now brought a motion before this Court, asking the court to impose sanctions for Tomar's alleged failure to comply with this Court's discovery order and other discovery abuses.

**II. DISCUSSION**

**A. Discovery Generally**

**\*3** The United States Supreme Court has long expressed that the liberal discovery rules are meant to ensure open, efficient, and fair dealings within the federal courts. See Hickman v. Taylor, 329 U.S. 495, 501 (1947). Prior to the procedural provisions in Federal Rules of Civil Procedure 26 through 37, "a judicial proceeding was a battle of wits rather than a search for the truth [and] each side was protected to a large extent against disclosure of its case." 8 Charles Alan Wright, et al, Federal Practice and Procedure § 2001 (2d ed.1994). The rules, however, impose a more liberalized procedure for pretrial discovery where "every party to a civil action is entitled to the disclosure of all relevant information in the possession an any person, unless the information is privileged." Id. The Court explained in Hickman: "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise." Hickman, 329 U.S. at 507. The Court noted that the Federal Rules of Civil Procedure regarding discovery were drafted so that "civil trials in the federal courts no longer need be carried on in the dark." Id. at 501.

Reiterating the need for parties to be forthcoming during the discovery process, in United States v. Procter & Gamble Co., the Court observed that the purpose of the discovery rules in federal court is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." 356 U.S. 677, 682 (1958); see also Greyhound Lines, Inc., v. Miller, 402 F.2d 134, 143 (8th Cir.1968) ( "The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice."). Thus, the Supreme Court has directed parties to conduct discovery with the goal of "ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues." Hickman, 329 U.S. at 500. "The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." Id. at 501. Although the rules do set boundaries to the scope of discovery, those boundaries serve only to protect against discovery abuses arising from discovery that is "being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry" or when an "inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." Id. at 507.

### B. This Court's Authority to Impose Sanctions for Discovery Abuse

The authority of the court to impose sanctions for misconduct committed in the course of discovery arises from two distinct authorities. The Federal Rules of Civil Procedure expressly provides authority for this court to impose sanctions for abuse of the discovery process. See FED.R.CIV.P. 37. The court may impose sanctions when, inter alia, a party fails to comply with an order from the court or when a party fails to amend or correct a response to a discovery request. Id. The court may also impose sanctions based on its inherent authority to control its own judicial proceedings. Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir.2004) (citing Chambers v. NASCO, Inc., 501 U.S. 32 (1991)); see also Arctic Cat, Inc. v. Injection Research Specialists, Inc., 210 F.R.D. 680, 683 (D.Minn.2002) ("In assessing the need for sanctions, a Federal District Court has the inherent authority, and responsibility, to regulate and supervise the bar practicing before it.").

**\*4** The court has a range of sanctions that may be imposed, including the awarding of attorney fees and costs, imposing an adverse inference instruction to the jury, directing factual findings, and finding a default judgment against the party that committed the misconduct. See FED.R.CIV.P. 37(b)(2)(A)-(C). When determining the severity of sanctions to impose, the court considers whether the conduct was committed in bad faith. Int'l Broth. of Elec. Workers v. Hope Elec. Corp., 380 F.3d 1084, 1105 (8th Cir.2004). In determining whether a party has acted in bad faith, the court must consider all of "the evidence and circumstances that tend to provide a complete understanding of the [party's] motivations." Id. (internal quotation marks omitted). An evidentiary hearing is not necessary "before sanctions are imposed where the record demonstrates a willful and bad faith abuse of discovery and the non-cooperating party could not be unfairly surprised by the sanction." Chrysler Corp. v. Carey, 186 F.3d 1016, 1022 (8th Cir.1999).

### III. 3M'S ASSERTIONS AND SANCTIONS REQUEST AND TOMAR'S RESPONSE

3M makes three basic assertions: (1) Tomar gave false discovery responses; (2) Tomar failed to retain, collect, and produce court-ordered documents; and (3) Tomar engaged in deposition misconduct. 3M requests that the Court sanction Tomar for this alleged flagrant and intentional discovery abuse by entering judgment against Tomar. In the alternative, 3M asks that the Court issue multiple sanctions against Tomar and lists ten suggested sanctions, including the Court making findings of facts adverse to Tomar, an adverse inference instruction given to the jury, certain impositions and restrictions be imposed against Tomar regarding further discovery, and attorney fees and costs.

Tomar responds that 3M's allegations are baseless. Tomar argues that the scope of discovery is limited by: (1) 3M's failure to mark the serial number on the Hamer patent on any of its patented products" and (2) the "calculated failure to provide written notice to Tomar of 3M's first asserted claim of patent infringement." Tomar then proceeds to present a legal argument on the limitations for damages in an infringement action imposed by 35 U.S.C. § 287(a). Tomar additionally argues that because Tomar generally sells its products to distributors that in turn sell the product to the end user, Tomar cannot be found to have induced the end user and therefore discovery relating to any cities or municipalities that use its product is irrelevant and outside the scope of discovery. Tomar categorizes 3M's discovery requests as "overreaching and overly broad." Tomar explains steps that it is undergoing to locate responsive information, but fails to explain why these explanations were not offered prior to 3M having to bring a motion for sanctions. Tomar concludes by asking the Court to "impose a January 1, 2005, time limit on the scope of documentary evidence in the present case." Tomar also requests that the Court designate a "top secret" designation, not included in the current designated levels of protection afforded in the protective order in place in this action, for its "highly proprietary STROBECOM II software."

### IV. TOMAR'S CONDUCT

#### A. Tomar's False Discovery Responses

**\*5** 3M alleges that Tomar gave false discovery responses. Tomar never directly refutes 3M's contentions that Tomar gave false discovery responses and that Sikora gave false testimony at his deposition regarding those responses. Tomar merely states, "There are two sides to every story."

On November 14, 2005, 3M served its first set of interrogatories on Tomar. Interrogatory No. 6 asked that Tomar "fully describe and identify all suppliers, manufacturers, assemblers, distributors, installers, customers, services, and end-users." Tomar replied on December 14, 2005, refusing to answer the interrogatory objecting on the basis of relevancy and stating that "the identity of Tomar's distributors, installers, services and end users represent carefully guarded company trade secrets." Tomar also stated that even if a protective order were to be issued by the Court, Tomar would continue to refuse to disclose any trade secret information. Finally, Tomar asserted that "[b]ased on the agreement to bifurcate the damages issue, no Tomar response is presently required."

On February 10, 2006, this Court ordered, *inter alia,* that Tomar fully respond to 3M's Interrogatory No. 6, overruled Tomar's objections regarding relevance, and stated that Tomar's concerns regarding confidential information and trade secrets could be addressed by a protective order from the Court. The Court also found that the requested information was relevant to 3M's infringement claim, and not just the damages aspect of the claim. Tomar submitted a supplemental response to 3M's Interrogatories on March 2, 2006. Tomar's response to Interrogatory No. 6 stated that "except for the City of Phoenix project identified previously, Tomar delivers its STROBECOM products to its distributors and the identify of the distributors' customers, servicers and end-users is not known by Tomar." This response was signed by counsel and by Tomar's president, Scott Sikora.

Scott Sikora was deposed on May 10, 2006. During his deposition, Sikora was questioned about Tomar's supplemental response to Interrogatory No. 6. First, Sikora admitted that there were outside suppliers of some components of the STROBECOM system. He stated, however: "I felt it was burdensome to try to figure out who all of those people are. So I didn't do it." (Sikora Dep. 218, May 10, 2006) He also stated that he did not see the relevancy of the names of suppliers. (*Id.*) Sikora was then asked about the customers or end users of Tomar's products. Sikora asserted that Tomar's answer given in the supplemental interrogatory responses was correct. He stated: "I listed the ones that we are directly aware of that are direct customers of Tomar's. The rest are products shipped to distributors. Where it goes after that I don't know." (*Id.* at 219-20.) When counsel expressed disbelief that Sikora would not know the cities that used the Tomar system, Sikora reiterated that the response to the interrogatory was correct and that he did not know any other cities other than the two already mentioned. (*Id.* at 222.)

**\*6** "False testimony in a formal proceeding is intolerable. We must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary proceedings." *ABF Freight Sys ., Inc. v. N.L.R.B.,* 510 U.S. 317, 323 (1994). Sikora's multiple statements during his deposition as Tomar's 30(b)(6) witness, and Tomar's supplemental response to 3M's interrogatory No. 6, that Tomar knew of only two entities that used its STROBECOM product, is clearly contradicted by evidence before this Court. First, Tomar's own bid proposal, submitted to the City of Phoenix, and signed by Scott Sikora, lists at least nine different entities that use the STROBECOM system. (3M Ex. 15.) Second, Tomar's sales representative, Bill Taylor sent an email to Sikora in July 2003 informing Sikora that the City of San Jose had agreed to trial test Tomar's system. (3M Ex. 16.) In April 2005, Taylor emailed Sikora telling him that "Tomar now has San Jose." (3M Ex. 17.)

A finding that a person or party has given false testimony under oath is not one that this Court makes lightly. The evidence clearly indicates that Sikora was aware of more than two entities that used the STROBECOM system and Tomar provides no evidence or arguments the that indicates otherwise. This Court finds that Tomar, through Sikora's deposition statements and the company's supplemental discovery responses, has willfully given false discovery responses.

### B. Tomar's Failure to Retain, Collect, and Produce Court-Ordered Documents

3M alleges that Tomar failed to produce documents pursuant to this Court's order compelling full and complete discovery responses. 3M states that Sikora did not inquire into whether other employees within the company had potentially relevant material, but merely looked at his own email and files. In addition, 3M alleges that, because Tomar failed to instigate a document hold on relevant documents, documents, including email, relevant to 3M's claims of infringement and inducement to infringe have been destroyed. Tomar does not directly address the alleged failure to fully respond to discovery as required by this Court's order, merely stating that 3M's discovery requests are overreaching and overly broad. Tomar does assert that Bill Taylor's email, alleged by 3M to have been destroyed, have not been destroyed. Tomar stated at the hearing that, after counsel and Sikora return from their respective vacations, they will review the requested email and produce those they deem relevant to this action.[FN2]

> FN2. Tomar also states that when Bill Taylor was deposed on May 17, 2006, Taylor brought his laptop computer with him and Tomar downloaded all of Taylor's email. Tomar suggests that, if 3M wanted these email, 3M should have requested the email at that time. This borders on the ridiculous. At that time, based on the deposition testimony of Sikora, 3M would have been under the reasonable impression that the email had all been irretrievably deleted from the system. Additionally, there is no indication that 3M was even aware that Taylor's laptop was in Tomar's possession. Finally, Tomar was already under the duty to produce these email according to 3M's discovery requests and this Court's order and, therefore, it was unnecessary for 3M to expressly requests the email at that time.

In light of the Supreme Court's directive that discovery under the federal rules requires a complete disclosure of relevant facts known to the parties, parties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests. Discovery requests served on a company solicits information known *to the company,* not solely information known by the president, CEO, or other person directed to respond to the discovery requests. Accordingly, a reasonable investigation by a company would include an inquiry of a company's employees for relevant information. A company need not question all employees, but must question those that would reasonably have relevant information.

*\*7* Once presented with 3M's discovery requests, Sikora had the duty to contact those people within Tomar that may reasonably be in possession of information or documents relative to 3M's claims. The evidence demonstrates that Sikora knew that his sales personnel had direct contact with distribution and end users, conducted training sessions with distributors and end users, and used email to conduct business. (Bill Taylor Dep., 3M Ex. 11 at 29-30, 49, & 53.) Accordingly, Sikora should have contacted employees involved in the sales of the STROBECOM II system to inquire about their knowledge of information or documents relevant to 3M's requests. Testimony indicates that Sikora did not ask his sales personnel for responsive documents. ( *Id.* at 80.)

In addition, Sikora should have inquired into information and documentation known by, or in the possession of, persons involved in Tomar's research and development of the system. Sikora claimed several times that he is the sole inventor of the STROBECOM II system and, therefore, no one else has relevant information to the development and manufacturing of the system. Evidence indicates otherwise. For example, Dr. David Huizingh testified that he participated in testing and developing the STROBECOM system, working almost exclusively on the STROBECOM II system. ( *See generally* Huizingh Dep., 3M Ex. 14.) Huizingh would therefore have been a person likely to have relevant documents and information. In fact, testimony revealed that Huizingh maintained several notebooks on the development of the STROBECOM II system. ( *Id.* at 30.) Huizingh, however, was never asked by Sikora to produce documents that were relevant to the STROBECOM II system. ( *Id.*) In addition, persons involved in the manufacturing of the STROBECOM system would reasonably have knowledge of relevant and discoverable information. Testimony indicates that Sikora never contacted any company employees to inquire about responsive information or documents. Tomar has presented no evidence or argument to this court that it has conducted a reasonable investigation for responsive information or documents, other than to assert that Sikora was in possession of all relevant documents and therefore an inquiry of other employees for relevant information was not necessary. Evidence indicates, however, that this position is not reasonable nor supported by evidence before this court.

A party's obligation to conduct a reasonable inquiry when presented with discovery requests during litigation also

triggers an "obligation to preserve evidence arises that when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y.2003); *see also E*TRADE Sec. LLC v. Deutsche Bank AG,* 230 F.R.D. 582, 588 (D.Minn.2005). Although Sikora has indicated that he prevented some documents from being destroyed, Tomar did not implement a company-wide litigation hold on relevant documents.[FN3] There is no indication that Sikora ever contacted any employee with instructions to retain documents relevant to the pending litigation. Employees testified that they had continued to delete documents, including email, after the litigation commenced. Sikora testified that he is the one most knowledgeable about the email system at Tomar. He told 3M during his deposition that once an email had been deleted, it could not be retrieved.

> FN3. Tomar argues that it was unnecessary to issue a document retention policy because Sikora was the only person who had relevant documents and that he did not need to issue a retention policy to himself. Evidence indicates, however, that contrary to Sikora's assertion that he has control over all information in the company and that no other person has relevant information, there are persons with relevant information and documents and that relevant documents may have been destroyed. Taylor testified to email pertaining to the STROBECOM system and training and sales material regarding STROBECOM. Sikora testified that he did not know the day to day activities of his sales people. He would, therefore, have had no idea whether they had relevant information or documentation and should have issued a retention policy.

**\*8** Tomar now states in its memorandum to the Court, that it has downloaded over 6000 individual emails from Tomar's sales representative's laptop computer and that these email, contrary to 3M's assertion, have not been destroyed. These email should have been produced in response to 3M first set of document requests, submitted over eight months ago. Based on assertions by Tomar and testimony by Sikora [FN4] and other Tomar employees, however, absent this motion for sanctions, it would have been assumed, both by this Court and opposing counsel, that these documents no longer existed. Because Tomar failed to initiate a litigation hold, it remains unclear to this court whether the email sent or received by Tomar employees or any relevant documents are still obtainable. Contrary to the sworn testimony by Sikora given at his depositions that all deleted email could not be retrieved, Tomar has now expressed to the Court that no documents, including email, have been destroyed. Based on the evidence in sworn testimony before this Court, absent evidence to the contrary, and noting that in four months since this Court's order compelling full responses to 3M's document requests, no email other than those from Sikora's mailbox have been produced, the Court finds that relevant email have been destroyed.

> FN4. Sikora testified under oath as follows:
>
> Q. Okay. And so with respect to e-mails that have been deleted, is there a way to obtain those e-mails?
>
> A. Not that I'm aware of.
>
> Q. Who is the most technically inclined person when it comes to e-mails in the company?
>
> A. Me.

In sum, Tomar has acted inappropriately with respect to the discovery process. First, Tomar failed to produce documents even after being explicitly required to do so by an order from this Court to fully comply with the 3M's document requests and interrogatories. Plaintiffs may not decline to produce documents on their own belief that a response is not relevant or overly burdensome without placing such an objection before the Court. In this case, in its initial response to 3M's discovery requests, Tomar listed several objections, including relevancy. This Court overruled those objections. Tomar did not appeal the discovery order to the district court. Tomar has waived further objections. Accordingly, Tomar cannot continue to object to producing documents that are responsive to 3M's requests. Certainly, Tomar cannot at this late date raise further objections based on a specious legal argument about the scope of discovery being limited by 3M's alleged failure to place a mark on their invention. This questionable argument is likewise untimely. Further, Tomar should have conducted a reasonable inquiry into whether employees, other than Sikora, had documents or information responsive to 3M's request. Tomar's sales personnel, those involved in the development of the STROBECOM and others would reasonably had responsive documents. Finally, Tomar should have instigated a litigation hold after being notified of this litigation. Tomar employees should have been notified to retain all documents relative to the development, manufacturing, sale and support of the STROBECOM II system. By failing to comply with this Court's express order to produce all responsive documents, failing to conduct a reasonable inquiry for relevant documents, failing to place a litigation hold on the destruction of documents, expressing new reasons and new objections to 3M as an excuse not to comply with this Court's order, and making specious legal

arguments more responsive to a motion to compel rather than a motion for sanctions, Tomar has exhibited a complete disregard for the authority of this Court and for the rules in which parties before this Court must abide.

### C. Tomar's Improper Conduct During Depositions

**\*9** 3M argues that Tomar should be sanctioned because Tomar's counsel, Thomas Watkins, and president, Scott Sikora, acted improperly during certain depositions. 3M describes several instances where, 3M claims, Watkins' or Sikora's conduct was inappropriate under the rules.

#### *1. Sikora's conduct during depositions*

The first incident described by 3M is Sikora's interjection of a comment during redirect conducted by Tomar's counsel of Bill Taylor. Sikora's comment is explained in Tomar's response brief as being done "to facilitate Mr. Taylor's answer." Sikora's interjection, however, elicited a response from the witness contradicting the witness' previous testimony. ( *See* 3M Ex. 11, Taylor Dep. 351, May 17, 2006.) Facilitating a deposing witness' testimony by an attending party is entirely inappropriate. The court notes that Sikora made remarks during another deposition. During the deposition of Tracy Vander Kooi, Sikora apparently became frustrated and upset over the questioning about the kind of car he and others were provided by the company for work and person use. (3M Ex. 13, Vander Kooi Dep. 69, May 18, 2006.) He also directed a question toward opposing counsel about the kind of car the attorney drove to work. ( *Id.* at 70.) The court does note that counsel for Tomar apologized for Sikora's actions. The Court, however, finds Sikora's conduct is inappropriate. Tomar is represented by counsel. If a party has relevant information that the party would like to impart to counsel to help clarify the questioning, the party may request a moment to confer with counsel. The party should not interrupt the deposition as this gives the impression that the party is guiding the witness' testimony. In addition, it is counsel's duty to object to any questioning that is beyond the scope of the depositions. Here, the court finds that Sikora's interjection during Taylor's deposition was an attempt to guide Taylor's testimony. In addition, the court finds that Sikora's conduct during other depositions was also inappropriate. To prevent this from occurring in future depositions, this court is barring Sikora from attending depositions other than his own.

#### *2. Tomar's Counsel's Conduct*

3M describes an incident when Watkins, Tomar's counsel, whispered to at least two deponents during their questioning by opposing counsel and attempted to limit 3M's ability to question witnesses by threatening to leave one deposition during 3M's questioning and stating that 3M had 30 seconds left for recross with another witness.

While this conduct is questionable, the court finds that it is not severe enough to warrant further sanctions. The court notes, however, to avoid the appearance of imparting coaching information to the witness, counsel should refrain from whispering to witnesses during the questioning period. The court additionally notes that the time limits for conducting depositions is clearly set forth in the rules and pretrial scheduling order. Counsel may not dictate another allocation of time absent an order from this court or by an agreement with opposing counsel.

#### *3. Tomar's Failure to Answer Questions about its Product in Development*

**\*10** During the depositions of Scott Sikora and David Huizingh, 3M asked about a new product that was being developed at Tomar related to the STROBECOM II system. 3M claims that this information is important, identifying the product as Tomar's attempt as a "design-around for the STROBECOM II system." Tomar claims that this product is unrelated to optical technology and therefore is not relevant to the present litigation. Both Sikora and Huizingh refused to answer questions about the product. (3M Ex. 10, Sikora Dep. 41-42; 3M Ex. 14, Huizingh Dep. 248-252.)

Under FED.R.CIV.P. 30, "[a]ll objections made at the time of the examination to ... any ... aspect of the proceedings shall be noted by the officer upon the record of the deposition; but the examination shall proceed, with the testimony being taken subject to the objections. FED.R.CIV.P. 30(c). Generally, a party may state an objection, but the deponent will continue to answer the posed questions. Where information is relevant and necessary to the presentation of a case the consequence of disclosure of a trade secret is not a bar to discovery. *Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., 12 F.R.D. 531, 545 (S.D.N.Y.1952)*. It may be appropriate, however, to protect the disclosed information with a protective order. *Id.*

Testimony indicates that this new product development project may be relevant to the STROBECOM II system. David

Huizingh stated that the development project was related to optical traffic preemption. (Huizingh Dep., 3M Ex. 14 at 248.) He also answered in the affirmative when asked: "Does [the product development project] leverage off technology that you've worked on regarding optical preemption products?" ( *Id.* at 251.) Thus, this information should have been discoverable since it appears relevant to the claims litigated or likely to lead to admissible evidence. Here, there is already a protective order in place. There is a designation of "confidential-outside attorneys, eyes only" which would sufficiently protect Tomar's trade secrets. Accordingly, Tomar must answer questions regarding the product development project.

### D. Other Discovery Abuses

The same shortcomings exhibited by Tomar's failure to completely respond to 3M's document requests discussed above, is reflected in Tomar's response to interrogatories and its preparation of its 30(b)(6) witness. Although not addressed by 3M, this Court notes Tomar's failure to conduct a reasonable investigation prior to responding to 3M's interrogatories and Sikora's lack of preparation prior to his deposition as Tomar's 30(b)(6) witness.

Under Rule 30, the party requesting a 30(b)(6) deposition, must articulate in its deposition notice the particular subject areas that the party anticipates will be discussed and are relevant to the party's claims. FED.R.CIV.P. 30. "[T]he responding party must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the opposing party] and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed by [the opposing party] as to the relevant subject matters." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D.Minn.2000). "Any other interpretation of the Rule would allow the responding corporation to 'sandbag' the depositional process 'by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.' " *Id.* In a 30(b)(6) notice, 3M set a list of areas that would be raised as topics for discussion. Tomar had a duty to prepare its 30(b)(6) witness to be capable of providing information relevant to those topic areas. Sikora admittedly did not confer with anyone in the company before he appeared as the company's 30(b)(6) deponent.[FN5] A company has a similar duty to conduct a reasonable investigation, make reasonable inquiries of it employees, and fully respond to interrogatories posed to the company. *See* FED.R.CIV.P. 33. The Court finds that, just as Tomar failed to fully respond to 3M's document requests, Tomar failed to prepare Sikora so that he could answer fully, completely, and unevasively, the questions posed by 3M and failed to fully respond to 3M's interrogatories. The Court finds that this lack of preparation, and considering Tomar's entire conduct during discovery, is further indication of Tomar's disregard of the authority and rules of this Court.

> FN5. After his deposition, however, and long after 3M had requested and this Court had ordered production all responsive documents, Tomar downloaded thousands of email of its sales representative. Tomar did not reveal its possession of the email until 3M brought the current motion for sanctions. It is not clear to the Court that these email would have ever been produced, had this motion not been before the Court. This appears to be just the situation that the *Prokosch* Court contemplateda limited, non-existent investigation for and production of responsive documents during pretrial discovery.

### E. Prejudice to 3M

*11 3M describes how Tomar's discovery abuses have affected its ability to proceed through the discovery process and present their claims before the Court. Tomar's failure to comply with the Court's discovery order and produce responsive documents has seriously hampered 3M's ability to litigate its claims against Tomar. False and evasive answers have caused delay and added costs. Failure to produce relevant and responsive documentation has hampered 3M's ability to conduct thorough and complete depositions. The failure to place a litigation hold on company documents has potentially caused relevant documents, potentially beneficial to 3M's claims, from ever coming to light. The Court finds that 3M has been greatly prejudiced by Tomar's misconduct.

### V. THE APPROPRIATE SANCTIONS

"In order to impose sanctions under Rule 37, there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir.1999). Based on the above discussion, the Court finds that sanctions are appropriate. Federal Rule of Civil Procedure 37 sets for a non-exhaustive list of possible sanctions a court may impose for discovery abuse. *See* FED.R.CIV.P. 37(b)(2). Rule 37 also states that "an evasive of incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." FED.R.CIV.P. 37(a)(3). Tomar's incomplete, willfully false, and evasive discovery responses borders on a complete failure to respond to 3M's discovery requests. This type of behavior alone could justify a

default judgment either under Rule 37 or the court's inherent authority to impose sanctions for an abuse of the judicial process. See Martin v. DaimlerChrysler Corp., 251 F.3d 691, 694 (8th Cir.2001). Taking into account (1) Tomar's failure to comply with this Court's order, (2) Tomar's failure to instigate a litigation hold to retain relevant documents, (3) Tomar's inappropriate conduct during depositions, the Court considered making such a recommendation to the district court. Noting that "there is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court," See Chrysler Corp., 186 F.3d 1016 at 1020. Nevertheless, the Court has concluded that a sanction of a default judgment would be extreme and that other less stringent sanctions are more appropriate. The Court, therefore, carefully considered the appropriate sanctions based on Tomar's misconduct and discovery abuse.

## VI. FINDINGS AND CONCLUSION

The Court finds that:

1. Scott Sikora as the representative for Tomar clearly gave false and misleading discovery responses;

2. Tomar failed to conduct a reasonably inquiry or investigation for information or documents responsive to 3M's discovery requests;

3. Tomar failed to comply by this Court's February 10, 2006, discovery order;

4. Tomar failed to instigate a litigation hold on relevant documents after being notified of pending litigation. Tomar has still not instigated a litigation hold even after being served discovery requests and ordered to comply with those discovery requests by this court. Tomar has yet to inform its employees to retain possible relevant documents;

*12 5. Noting the lack of credible evidence to the contrary, evidence presented to the Court is sufficient to indicate that relevant and discoverable documents have been destroyed;

6. Sikora acted inappropriately during depositions and guided a witness' answer;

7. Tomar's counsel inappropriately directed Sikora and Huizingh not to answer questions regarding Tomar's product development project;

8. Tomar's described conduct is an abuse of the discovery process; and

9. Tomar has exhibited a complete disregard for the authority of this Court and for the rules in which parties before this Court must abide.

Contrary to the directive of the Supreme Court, this discovery has all the earmarks of a game of blind man's bluff. Based on the findings of this Court and the reasoning set forth in the memorandum, the Court has issued the order above delineating the appropriate sanctions

D.Minn.,2006.
3M Innovative Properties Co. v. Tomar Electronics
Slip Copy, 2006 WL 2670038 (D.Minn.)

Motions, Pleadings and Filings (Back to top)

- 2006 WL 422805 (Trial Motion, Memorandum and Affidavit) Tomar Electronics' Memorandum in Opposition to 3M's Motion for Entry of A Protective Order (Jan. 10, 2006) Original Image of this Document (PDF)
- 2006 WL 422806 (Trial Motion, Memorandum and Affidavit) Tomar Electronics' Memorandum in Opposition to 3M's Motion to Compel (Jan. 10, 2006) Original Image of this Document (PDF)
- 2006 WL 422803 (Trial Motion, Memorandum and Affidavit) 3M's Memorandum in Support of Its Motion for Entry of A Protective Order (Jan. 3, 2006) Original Image of this Document (PDF)
- 2006 WL 422804 (Trial Motion, Memorandum and Affidavit) 3M's Memorandum in Support of Its Motion to Compel Discovery from Tomar ÝCorrected" (Jan. 3, 2006) Original Image of this Document (PDF)
- 0:05cv00756 (Docket) (Apr. 13, 2005)
- 2005 WL 1308158 (Trial Pleading) Complaint (2005) Original Image of this Document (PDF)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.