UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BERKLEY RISK ADMINISTRATORS                    CIVIL NO. 06-2804 (PAM/JSM)
COMPANY, LLC, et al.,

      Plaintiffs,

v.                                                                    ORDER

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

      Defendant.

      JANIE S. MAYERON, U.S. Magistrate Judge

      The above matter came before the undersigned upon plaintiffs' Motion to Compel

Discovery [Docket No. 18].  David L. Hashmall, Esq., appeared on behalf of plaintiffs.

Richard T. Thomson, Esq., and Amy L. Schwartz, Esq., appeared on behalf of

defendant.

      The Court, being duly advised in the premises, upon all of the files, records, and

proceedings herein, and for the reasons stated on the record at the hearing, now makes

and enters the following Order.

      IT IS HEREBY ORDERED that:

1. Plaintiffs' Motion to Compel Discovery [Docket No. 18] is GRANTED in part
   and DENIED in part.

2. Defendant shall provide supplemental responses and responsive documents
   required by this Order on or before January 21, 2008.

Dated:      January 7, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## **MEMORANDUM**

## I.    **FACTUAL BACKGROUND**

Plaintiffs instituted this suit in June of 2006, alleging breach of contract, conversion, and negligence based upon Wells Fargo Bank's ("Wells Fargo") acceptance for deposit checks embezzled from plaintiffs  (collectively referenced as "BRAC") by its Chief Financial Officer, Steven J. Davis.  First Amended Complaint, ¶ 11-15 [Docket No. 15].  Plaintiffs alleged that Davis intercepted checks issued to plaintiffs, endorsed them, and deposited them into his personal banking accounts at Wells Fargo, including an account held in the name of JAML Investments, or that he endorsed checks issued by BRAC to third parties and deposited the checks into his bank accounts at Wells Fargo. Id. at ¶¶ 9, 11.  Plaintiffs further alleged that Wells Fargo failed to exercise ordinary care, acted in bad faith and neglected to observe reasonable commercial standards by accepting the deposits and by wrongfully debiting the accounts of plaintiffs.  Id. at ¶¶ 13-14.  There are 62 checks at issue, dating from July of 1996 to October of 2000, and totaling approximately $1,534,260.92.  See Id., Ex. A.

According to Wells Fargo, the majority of checks are not ordinarily examined by Wells Fargo employees because they are taken by automated means.  Affidavit of Cynthia J. Swan, ¶ 3 [Docket No. 27].  However, when a check is physically brought to a bank and presented to a teller for deposit, the teller will ordinarily examine the check.

Swan Aff., ¶ 3.  To determine whether a check was deposited through a teller, Wells Fargo must inspect the check itself; if a teller was used, the check contains either a teller number or a cash box number by which the teller can be identified.  Swan Aff., ¶ 5. To determine whether a check deposited prior to 2004 was deposited with a teller, Wells Fargo requires a copy of the check or a copy of the sequence identification number. Swan Aff., ¶ 6.  Wells Fargo has located 34[1] of the 62 checks at issue in this case and inspected them for teller numbers and cash box numbers, and found that three of the 34 checks bear such numbers.  Swan Aff., ¶ 7.  Two of the checks were taken by a teller named Chirayu B. Dongre, and the third was taken by a teller named Jeffrey D. Schmidt.  Swan Aff., ¶ 7.  Counsel for Wells Fargo was successful in contacting Dongre, who does not recall anything about accepting the two checks for deposit or anything about Mr. Steven Davis.  Affidavit of Richard T. Thomson, ¶ 2 [Docket No. 25].  Efforts to contact Schmidt as of the date of the hearing had been unsuccessful.  Thomson Aff., ¶ 2.

Prior to 2004, Wells Fargo stored each transaction in chronological order, not by customer name or account number.  Swan Aff., ¶ 8.  In order to retrieve information for a check associated with a deposit, Wells Fargo must know the sequence number for the check or deposit, which can only be obtained if Wells Fargo has the account number, amount of deposit, and date of the deposit.  Swan Aff., ¶ 8.  According to Wells Fargo, plaintiffs have had approximately 60 different accounts at Wells Fargo,[2] and plaintiffs

---

[1]     At the hearing, Wells Fargo represented that it had located another twelve checks.

[2]     As discussed in connection with Document Request No. 5, _infra_, according to plaintiffs, there are only four of their accounts at issue.

have not identified the specific account on which each of the checks at issue was drawn.  Swan Aff., ¶ 9.  As for checks deposited in accounts owned or controlled by Davis, Wells Fargo cannot identify deposits to those accounts because, unless the deposit consisted of a single check, the deposited amount appearing as a single transaction will differ from the amount of the check.  Swan Aff., ¶ 9.

On February 14, 2007, plaintiffs served their First Set of Interrogatories and Requests for Production of Documents, and served their Second Set of Interrogatories and Requests for Production of Documents on February 23, 2007.  Affidavit of Ryan Olson, ¶¶ 2-3, Ex. A-C [Docket No. 22].  Wells Fargo served its responses on April 13, 2007.  Olson Aff., Exs. D-F.  At issue in this motion are Wells Fargo's responses to Interrogatory Nos. 4, 5, 10, 12, 14, 26, and their responses to Document Request Nos. 5, 6, 7, 15, and 17.  Plaintiffs contended that Wells Fargo's responses are deficient and asks the Court to compel Wells Fargo to fully and completely respond to the interrogatories and document requests.  See Pl. Mem., p. 2 [Docket No. 20].  In response, Wells Fargo argued that plaintiffs' requests are burdensome and costly or seek irrelevant information, and that in some instances, Wells Fargo is unable to or has answered the requests as best as it can.  See Def. Mem., pp. 1-3 [Docket No. 24].

## II.    DISCUSSION

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  Relevant information need not be admissible at the trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence at trial.  See Fed. R. Civ. P. 26(b)(1) ("parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

party."); see also Minnesota Specialty Crops, Inc. v. Minnesota Wild, 210 F.R.D. 673,

675 (D.Minn. 2002) ("Generally, discovery may inquire into all information, not otherwise

privileged, that is relevant to the subject matter of the action, provided that it is

reasonably calculated to lead to the discovery of admissible evidence."); Walker v.

Northwest Airlines Corp., No. Civ. 00-2604 MJD/JGL, 2002 WL 32539635 at *1 (D.

Minn., Oct. 28, 2002) ("In the context of discovery, 'relevant' has been defined as

encompassing 'any matter that bears on, or that reasonably could lead to other matters

that could bear on, any issue that is or may be in the case.'") (quoting Hickman v.

Taylor, 329 U.S. 495, 501 (1947)).

At the same time, in recognition that sometimes the production of relevant

information may be too burdensome, Rule 26(b)(1) states that "all discovery is subject

to the limitations imposed by Rule 26(b)(2)(C)."  Rule 26(b)(2)(C) of the Federal Rules

of Civil Procedure provides in pertinent part:

> The frequency or extent of use of the discovery methods otherwise
> permitted under these rules and by any local rule shall be limited by
> the court if it determines that: (i) the discovery sought is
> unreasonably cumulative or duplicative, or is obtainable from some
> other source that is more convenient, less burdensome, or less
> expensive; (ii) the party seeking discovery has had ample
> opportunity by discovery in the action to obtain the information
> sought; or (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit, taking into account the needs of the
> case, the amount in controversy, the parties' resources, the
> importance of the issues at stake in the litigation, and the
> importance of the proposed discovery in resolving the issues. The
> court may act upon its own initiative after reasonable notice or
> pursuant to a motion under Rule 26(c).

Therefore, pursuant to Rule 26(b)(2)(C)(iii), a court may limit discovery if the

burden of discovery outweighs its likely benefit.  See also Wiginton v. CB Richard Ellis,

229 F.R.D. 568, 571-572 (N.D.Ill. 2004) (identifying general principles limiting discovery

under Fed. R. Civ. P. 26); OpenTV v. Liberate Technologies, 219 F.R.D. 474, 475 (N.D.Ca. 2003) (same).  In addition, pursuant to Rule 26(c)(2), the Court has the ability to enter a protective order for good cause shown to protect a party from undue burden or expense, including requiring that the discovery may be had only on specified terms and conditions.  See also Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa, 482 U.S. 522, 566, 107 S.Ct. 2542, 2567 (1987) (quoting Fed. R. Civ. P. 26(c)) ("A court may 'make any order which justice requires' to limit discovery, including an order permitting discovery only on specified terms and conditions, by a particular discovery method, or with limitation in scope to certain matters.").

With these principles in mind, the Court now reviews the discovery at issue in this motion.

### Interrogatory No. 4

Identify all persons, whether parties or non-parties, whom you believe have any information or knowledge, or claim to have the same, of any facts or matters relating to the allegations or defenses made in any of the pleadings, and describe in detail the information possessed by each individual.

**RESPONSE**: Wells Fargo objects to Interrogatory No. 4 because it is vague, overly broad unduly burdensome, and is in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Wells Fargo answers further as follows. Wells Fargo has not yet identified the individuals who may have information concerning the pleadings in the lawsuit. Wells Fargo believes it is possible that Steven J. Davis and representatives of plaintiffs may have such knowledge. Discovery and investigations are continuing, and Wells Fargo reserves the right to identify at a later time persons who have knowledge about facts relevant to this action.

Plaintiffs claimed that Wells Fargo's response is inadequate, and ignores the time period set forth in Rule 33 of the Federal Rules of Civil Procedure which requires a party to answer the interrogatory in 30 days.  Pl. Mem., p. 4.  In response, Wells Fargo argued that the individuals sought to be identified by plaintiffs either do not exist, cannot be identified, or that plaintiffs have not provided enough account information so that Wells Fargo can determine the identity of the individuals.  Def. Mem., p. 5.

The Court grants in part and denies in part plaintiffs' motion with respect to Interrogatory No. 4.  It is clear that the purpose of the interrogatory is for plaintiffs to learn the identity of those persons who have relevant information to the claims and to the defenses of Wells Fargo.  It is also clear from the hearing that if this matter proceeds to trial, Wells Fargo will call witnesses to testify on its behalf to counter plaintiff's claims and to support its defenses, including witnesses who will testify regarding such topics as Wells Fargo's agreements with BRAC; Wells Fargo's policies, practices and procedures with respect to the deposit, payment, negotiation or other handling of forged, altered or unauthorized checks or instruments; steps taken by Wells Fargo's agents or employees to determine whether the checks identified in Exhibit A to the First Amended Complaint could properly be deposited into Davis' account; guidelines, policies or other instructions given to Wells Fargo's employees bearing on the review and consideration of endorsements or signatures on checks or instruments; decisions relating to the recrediting of accounts for the payment by Wells Fargo of forged, stolen, or unauthorized checks or instruments; and the like.  Plaintiffs are entitled to know the identity of these persons, and therefore, Wells Fargo shall be required to supplement its response and identify these individuals for plaintiffs.

On the other hand, this Court rejects plaintiffs' suggestion at the hearing (and as set forth in the proposed Order provided to the Court and Wells Fargo at the hearing) that the "identified persons should include without limitation" the tellers who handled the deposits in question,[3] the supervisors of those tellers, the persons who considered or had the authority to consider whether to credit plaintiffs' accounts for the checks at issue, persons at Wells Fargo who communicated with BRAC or internally with regard to the events at issue, persons at Wells Fargo who investigated the events at issue, all persons reflected in Wells Fargo's internal file regarding the events at issue, and all Wells Fargo's fraud investigators who considered this matter.  Pls. Prop. Ord., pp. 1-2. It is not evident to this Court, in light of the very general wording of Interrogatory No. 4, that plaintiffs were seeking to learn the identity of all of these categories of individuals. If plaintiffs want Wells Fargo to provide them with the identity of these various types of persons, then plaintiffs are free to propound interrogatories to Wells Fargo that seeks the identity of those persons, and not ask Wells Fargo to guess at what plaintiffs were seeking by the general nature of Interrogatory No. 4.

### Interrogatory No. 5

Describe in detail all of Defendant's policies and procedures concerning or relating to the deposit, payment, negotiation or other handling of forged, altered or unauthorized checks or instruments.

**RESPONSE:** Wells Fargo objects to Interrogatory No. 5 because it is vague, overly broad, unduly burdensome, argumentative, in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and calls for the disclosure of confidential commercial information. Subject to and without waiving its objections,

---

[3]     The Court will address the identity of the tellers who handled the checks that were issued to BRAC or were written by Davis on the BRAC accounts, and then endorsed by Davis and deposited into his accounts, in connection with Wells Fargo's response to Interrogatory No. 10.

Wells Fargo answers further as follows. Subject to the protective order between the parties and pursuant to Fed. R. Civ. P. 33(d), Wells Fargo will produce relevant, non-privileged, non-work-product documents in its possession sufficient to respond to this interrogatory, if any such exist.

Plaintiffs' request that Wells Fargo be compelled to fully answer Interrogatory No. 5 is denied in part and granted in part. Wells Fargo contends that it has fully answered Interrogatory No. 5. Wells Fargo produced to plaintiffs a document entitled "Loss Prevention Module 5 Deposits Participant Guide," and represented to the Court that it is the only document responsive to Interrogatory No. 5. Def. Mem., p. 12. While Wells Fargo has now produced copies of all documents that describe procedure, it also stated at the hearing that these documents only go back to 2001 or 2002 and not back to 1996, which was the first year that the checks allegedly began to be deposited by Davis. Therefore, for those years for which Wells Fargo has no documents to describe the information sought by this interrogatory, Wells Fargo shall answer the interrogatory and describe in detail its policies and procedures concerning or relating to the deposit, payment, negotiation or other handling of forged, altered or unauthorized checks or instruments.

### Interrogatory No. 10

Identify each employee or agent (by job title) that reviewed the checks and/or endorsements of the checks identified in Exhibit A to the First Amended Complaint.

**RESPONSE**: Wells Fargo objects to Interrogatory No. 10 because it is vague, overly broad, unduly burdensome, multiple, argumentative, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Wells Fargo states further as follows. Wells Fargo has not yet identified, and may not be able to identify, any person who has reviewed the checks and/or endorsements of the checks identified in Exhibit A to the First Amended Complaint.

To determine the identity of the tellers who handled checks issued to BRAC that were endorsed by Davis and deposited into his accounts, or were written by Davis, endorsed by Davis and then deposited into his accounts, Wells Fargo indicated at the hearing that it had examined 32 checks prior to the hearing and identified another 12 from the documents recently produced by plaintiffs.  Of the 32 checks examined, three were deposited across a teller line.  To the extent that any of the 12 unexamined checks were also deposited across a teller line, Wells Fargo shall identify the tellers it has determined handled these deposits and provide to plaintiffs their last known address and phone number.  As to the remaining 18 checks that plaintiffs are claiming Wells Fargo wrongfully handled, in order to assist Wells Fargo in locating sufficient information to determine the name of any teller who accepted the check for deposit, to the extent they have not already produced these checks to Wells Fargo, plaintiffs shall provide copies of these checks (front and back) to Wells Fargo, if they have possession, custody or control over these checks.  In addition, to the extent they have not already done so, as to any of those 18 checks which plaintiffs are unable to produce to Wells Fargo, then plaintiffs shall supply the following information[4] to Wells Fargo:

1. For any checks that were written on a BRAC bank account, plaintiffs shall supply to Wells Fargo the name and account number against which the check was written and the name and account number into which the check was deposited, and the date of deposit.

2. For any checks that were issued to BRAC and deposited into a Davis account, plaintiffs shall supply to Wells Fargo the name and account number into which the check was deposited, and the date of deposit.

3. If plaintiffs do not know the account name and number against which a specific check was written or in which a specific check was deposited,

---

[4]      This directive assumes that plaintiffs possess or have access to this information regarding the checks, and account names and numbers.

or the date of deposit, then plaintiffs shall provide to Wells Fargo the names and numbers of those accounts that they reasonably believe these checks were either deposited or written against, and any information they may possess regarding the likely date of deposit of the check.

With this information, Wells Fargo will have adequate information[5] to search for the remaining 18 checks and shall do so to determine whether any of these checks were reviewed by a teller, and if so, to determine the identity of the teller. Then, to the extent that any of the checks were deposited across a teller line, Wells Fargo shall identify the tellers it has determined handled these deposits and provide to plaintiffs their last known address and phone number.

### Interrogatory No. 12

Identify all documents relating to the training of employees regarding the review of checks or instruments submitted for deposit and/or the review of endorsements.

**RESPONSE:** Wells Fargo objects to Interrogatory No. 12 because it is vague, overly broad, unduly burdensome, multiple, argumentative, in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and calls for the disclosure of confidential commercial information. Subject to and without waiving its objections, Wells Fargo answers further as follows. Subject to the protective order between the parties and Fed. R. Civ. P. 33(d), Wells Fargo will produce relevant, non-privileged, non-work-product documents in its possession sufficient to respond to this interrogatory, if any such exist.

Wells Fargo produced the Deposits Guide in response to Interrogatory No. 12. Additionally, Wells Fargo maintained that while the Interrogatory did not specifically request past documents related to the training of employees, on May 25, 2007, past documents related to training were located and subsequently produced to plaintiffs.

---

[5]     This Court notes that in its response to Document Request No. 5, Wells Fargo represented it would produce the deposit tickets/slips for the checks identified in Exhibit A to the First Amended Complaint.

Thomson Aff., ¶ 5.  Wells Fargo stated that it has now produced copies of all documents that describe the training.  However, it also stated at the hearing that these documents only go back to 2001 or 2002, and not back to 1996.  Therefore, for those years for which it has no documents to describe the information sought by this interrogatory, Wells Fargo shall amend its response to the interrogatory and state that it does not possess responsive documents prior to the last training document it produced.

### Interrogatory No. 14

Describe in detail each step taken by Defendant's agents or employees to determine whether the checks identified in Exhibit A to the First Amended Complaint could properly be deposited into the JAML Investment account or any other JAML account.

**RESPONSE**: Wells Fargo objects to Interrogatory No. 14 because it is vague, overly broad, unduly burdensome, multiple, argumentative, and not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Wells Fargo states further as follows. See the documents produced in answer to Plaintiffs interrogatories herein.

Wells Fargo argued that since it processes checks by automated means and no persons can recall taking checks at issue, it is not possible to describe steps each employee took to determine whether the checks could be properly deposited into JAML account.  Def. Mem., p. 8.  Therefore, Wells Fargo claimed that it could only describe the general steps as set forth in the Deposits Guide already produced.

The Court grants plaintiffs' request with respect to Interrogatory No. 14.  If Wells Fargo does not know the actual steps each employee took because it does not know which employees handled the checks or those who have been identified cannot remember anything about the checks, then Wells Fargo must so state in its response.  At the same time, Wells Fargo may also describe its practice and procedures in the

ordinary course of business and that it has no reason to believe that they were not followed in this case.  The point is that plaintiffs are entitled to know what Wells Fargo does and does not know.  "If a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available."  8A C. Wright and A. Miller, Federal Practice and Procedure § 2177 (2d ed. current through 2007). See also Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc., 64 F.R.D. 459, 463 (S.D.N.Y. 1974) (if plaintiff knew no further information sought in the interrogatories, it was required to so state, and if it could only answer partially, it should have stated that its answers reflected all the information it had).  Wells Fargo shall provide a complete answer to Interrogatory No. 14.

### Document Request No. 5

With respect to deposits into the accounts of Plaintiffs, produce complete copies (front and back) of all deposit tickets/slips and related checks deposited into Plaintiffs' bank account(s) with Defendant between July 1996 and September 2004.

**RESPONSE**: Wells Fargo objects to Request No. 5 because it is vague, overly broad, unduly burdensome and expensive, cumulative, and in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Wells Fargo states further as follows. Wells Fargo will produce the requested documents concerning the checks identified in Exhibit A to the First Amended Complaint in its possession for inspection and copying at the offices of its undersigned counsel at a time to be agreed upon by counsel for the parties.

Plaintiffs argued that Request No. 5 is not limited to the checks as identified in Exhibit A, as stated in Wells Fargo's response.  Pls. Mem., p. 9.  Wells Fargo contended that this request is unduly burdensome and expensive, and claims that the cost of production would exceed $300,000 to produce what could potentially be 30,000

separately archived documents.[6]   Def. Mem., pp. 16-17.   Additionally, Wells Fargo claimed that while plaintiffs say the information requested is relevant because it would show that the checks were abnormally endorsed, the information is not relevant because (1) Wells Fargo has no duty to monitor endorsements under UCC and Minnesota law, (2) Minnesota law holds that a depository bank has no duty to examine the signatures of payees or other intermediate endorsers, and (3) Davis was an authorized signer.   Def. Mem., pp. 19-20.

In the Amended Complaint, plaintiffs alleged violation of Minn. Stat. §§ 336.3-101 et seq., and §§ 336.4-101 et seq.   Amended Complaint, ¶¶ 20, 24, 28.   These are the sections of the Minnesota Commercial Code that are applicable to negotiable instruments and bank deposits and collections.   In its Answer, Wells Fargo relied upon Minn. Stat. §§ 336.3-404, 405, 406 and 336.4-406, which respectively address impostors and fictitious payees, an employer's responsibility for fraudulent endorsement by an employee, negligence contributing to forged signature or alteration of instrument, and a customer's duty to discover and report unauthorized signature or alteration.    The Court notes that these statutes also contain language addressing comparative fault. Sections 336.3-404(d) and 336.3-405(b) both contain provisions stating that "…if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to

---

[6]      According to Wells Fargo, BRAC and Wells Fargo have an agreed-upon fee schedule whereby BRAC is obligated to pay Wells Fargo $10.00 for each photocopy of any requested item.  Swan Aff., ¶ 17.

exercise ordinary care contributed to the loss." Minn. Stat. §§ 336.3-404(d), 336.3-405(b). Sections 336.3-406(b) and 336.4-406(e) also address the failure of the person or bank paying the check to exercise ordinary care and allow for contributory negligence. Based upon the Court's review of these statutes, there is an opportunity for plaintiffs to attack Wells Fargo's handling of the checks and deposits. Thus, the information sought by Request No. 5 could lead to the discovery of admissible evidence at trial. However, as it is written, the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. See Rule 26(b)(2)(C)(iii).

As it is set forth, plaintiffs are demanding production of an estimated 30,000 separately archived documents at a cost of $300,000. While plaintiffs offered at the hearing to limit the request to the years ranging from 2000-2004 and to the first 5 checks deposited into plaintiffs' accounts for each month of each of those four years, even this more restricted production is still too costly and burdensome. According to Wells Fargo, plaintiffs had 60 accounts, and therefore 5 checks multiplied by 48 months and 60 accounts results in the production of approximately 14,400 checks and a cost of $144,000 to retrieve the checks.

At the hearing, plaintiffs stated that there are four Wells Fargo accounts held by BRAC, and referenced the account numbers found in the documents Bates-stamped

WF01738-40 and WF1234-36.[7]   Based on that representation, Wells Fargo shall produce the first two checks deposited into each of BRAC's four or five accounts for each year between September 2000 and September 2004, which will result in the production of approximately 32-40 checks at a cost of $320-$400.   The Court believes that this number of checks will be adequate to test plaintiffs' theory that checks properly deposited into plaintiffs' accounts looked different than the checks deposited into Davis's accounts, while at the same time addressing Wells Fargo's claim of burden and cost.   Alternatively, if plaintiffs have particular checks they want Wells Fargo to produce (but no greater than 40), they may request that Wells Fargo produce those particular checks.   The cost of the production shall be borne by plaintiffs.

### Request No. 6

Produce all training materials, guidelines, policies or other instructions given to Defendants employees that relate to the review and consideration of endorsements or signatures on checks or instruments.

**RESPONSE**: Wells Fargo objects to Request No. 6 because it is vague, overly broad, unduly burdensome, is in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and calls for confidential commercial information. Subject to the protective order entered by the Court, Wells Fargo will produce any relevant, non-privileged, non-work product, responsive documents in its possession for inspection and copying at the offices of its undersigned counsel at a time to be agreed upon by counsel for the parties.

Again, Wells Fargo argued that it produced the Deposits Guide and represented at the hearing that it had produced training materials dating back to 2001 or 2002,

---

[7]   In the Court's review of those documents, it appears there are possibly five accounts.   Documents WF01738-01740 refer to four account numbers, while documents WF1234-36 appears to be a bank statement regarding a fifth account belonging to Rasmussen Agency Inc. d/b/a Berkley Risk Managers.

despite the fact that the document request did not specifically ask for past training manuals.

Plaintiffs' request to compel a full response to Request No. 6 is denied. According to Wells Fargo, they have produced all materials they possess for the years 1996-2004. It cannot produce that which it does not have, and plaintiffs have provided no evidence that Wells Fargo is not being forthright. Plaintiffs have not adequately demonstrated to this Court that Wells Fargo has withheld documents responsive to Request No. 6. A party is only required to produce those documents which are within its possession or control. <u>See</u> Fed. R. Civ. P. 34; <u>see also</u> <u>VICA Coal Co., Inc. v. Crosby</u>, 212 F.R.D. 498, 501 (S.D.W.Va. 2003) (denying a motion to compel where the party moved for documents that did not exist, while failing to provide even a scintilla of evidence that the defendant was anything less than completely truthful); <u>Century Industries Co. v. Rosemount Inc.</u>, No. Civ. 01-103 (DWF/AJB), 2002 WL 1035455 at *2 (D. Minn. May 21, 2002).[8] As such, plaintiffs' motion to compel as it relates to Request No. 6 is denied.

### Request No. 7

---

[8]      The court in <u>Century Industries</u> found:

> Defendant's counsel, as officers of the court, have represented to the Court that the full documents have been produced. Plaintiffs have offered no concrete basis to believe that Defendant's counsel have misrepresented themselves to the Court; rather Plaintiffs would have the Court disregard the attorneys' representations to the Court solely on the basis of rank speculation. The Court declines to do that, and Magistrate Judge Boylan's decision not to compel production of documents which, according to Defendant, do not exist is not clearly erroneous.

2002 WL 1035455 at *2.

Produce all documents (including guidelines, policies and procedures) relating to the recrediting of accounts for the payment by Defendant of forged, stolen, or unauthorized checks or instruments.

**RESPONSE**: Wells Fargo objects to Request No. 7 because it is vague, overly broad, unduly burdensome, and in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and calls for confidential commercial information. Subject to and without waiving its objections, Wells Fargo responds further as follows. Subject to the protective order entered by the Court, Wells Fargo will produce any relevant, non-privileged, non-work product, responsive documents in its possession for inspection and copying at the offices of its undersigned counsel at a time to be agreed upon by counsel for the parties.

Wells Fargo argued that its duty to recredit is governed by the UCC and account agreements. Wells Fargo stated that it has produced the account agreements, and that it has no other documents to produce.

Wells Fargo has produced all materials they possess for the years 1996-2004, and again, they cannot produce what they do not have. Plaintiffs have provided no evidence that Wells Fargo is withholding anything, and as such, plaintiffs' motion as it relates to Request No. 7 is denied.

### Request No. 15

Produce all documents (including but not limited to correspondence of the Banking Resolutions and account agreements), relating to Plaintiffs accounts with Defendants and all accounts maintained by JAML or Steven J. Davis with Defendant.

**RESPONSE**: Wells Fargo objects to Request No. 15 because it is vague, overly broad, unduly burdensome, and expensive, and in whole or in part not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Wells Fargo further objects to Request No. 15 because the Request fails to identify the accounts of Plaintiffs, JAML, or Steven J. Davis with particularity sufficient to enable Wells Fargo to identify, or know that it has identified, all such accounts and/or documents. Subject to and without waiving its objections, Wells Fargo responds further as follows. Subject to the protective order entered by the Court, Wells Fargo will produce the relevant account agreements, banking resolutions, and statements concerning the checks identified in Exhibit A to the First

Amended Complaint, and copies of such checks, that Wells Fargo finds with good-faith efforts, in its possession for inspection and copying at the offices of its undersigned counsel at a time to be agreed upon by counsel for the parties.

Plaintiffs claimed that they want the information to "demonstrate ownership, authority with respect to accounts, and obligations between the parties with respect to the accounts." Pl. Mem., p. 12.  Wells Fargo argued that, assuming plaintiffs are not seeking all checks relating to all these accounts, it has produced the documents sought. Def. Mem., p. 21.

Wells Fargo has produced all materials they possess, and again, they cannot produce what they do not have.  Plaintiffs have provided no evidence that Wells Fargo is withholding anything, and as such, plaintiffs' motion as it relates to Request No. 15 is denied.

### Interrogatory No. 26 and Request No. 17

Interrogatory No. 26

Identify each check or instrument with any unauthorized, invalid, forged, or improper signature or endorsement, or other irregularity, that Defendant collected, paid, or processed between July 1, 1996 and August 30, 2004, with regard to which Defendant made any account adjustment, credit, payment, or refund in favor of to, or on behalf of its customer, account holder, or any other person, and for each such check or instrument, identify the action taken and the reason for said action by Defendant.

**RESPONSE**: Wells Fargo objects to Interrogatory No. 26 because it is vague, overly broad, unduly burdensome, expensive, argumentative, impossible to answer, not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and calls for confidential commercial information.

Request No. 17

Produce all documents that relate to the checks, instruments, account adjustments, credits, payments, refunds and actions identified in response to Interrogatory No. 26.

**RESPONSE**: Wells Fargo objects to Request No. 17 because it is vague, overly broad, unduly burdensome, expensive, argumentative, impossible to accomplish, not relevant and not reasonably calculated to lead to the discovery of admissible evidence, and calls for confidential commercial information.

In response to Interrogatory No. 26 and Request No. 17, Wells Fargo argued that the interrogatory and document request are impossible to answer because Wells Fargo does not have a separate database or means to sort checks on which an account adjustment, credit, payment, or refund has been made, and also does not have a database or means to sort checks involving unauthorized or forged endorsements.  Def. Mem., p. 10; Swan Aff., ¶ 13.   Each bank transaction would have to be reviewed individually, and to collect the documents sought by plaintiffs would cost millions of dollars.   Def. Mem., p. 11; Swan Aff., ¶ 13.   Further, Wells Fargo argued that the information sought by plaintiffs is irrelevant because its duty to recredit is governed not by its dealings with other customers, but by its specific account agreements with plaintiffs and the UCC.  Def. Mem., p. 11.  In support of its argument, Wells Fargo cited to Minn. Stat. §§ 336.4-102 and 336.4-406.

The Court observes that Minn. Stat. § 336.4-406(e) allows for contributory fault by the bank, and the manner in which Wells Fargo dealt with other customers in similar situations could bear on the issue at hand.   Nevertheless, the Court denies plaintiffs request to compel Wells Fargo to more fully answer Interrogatory No. 26 and Request No. 17.  Even accepting plaintiffs' claim that the information is relevant to their theory of

comparative fault, the request is too burdensome and expensive to locate the documents.   The burden of expenditure of millions of dollars to individually review millions of transactions far outweighs the benefit of the discovery sought in this instance.

## III.   CONCLUSION

Plaintiffs claim that they cannot believe that Wells Fargo Bank, a multi-million dollar organization, does not have the information or documents they are seeking, or that it cannot obtain the information sought by plaintiffs without great burden and expense.   However, this Court's job is to evaluate the facts presented by the parties, not the beliefs of the parties.   If, after further discovery (e.g. a Rule 30(b)(6) deposition of Wells Fargo on many of these issues), plaintiffs determine that the information they sought does indeed exist, or is readily ascertainable and producible, contrary to Wells Fargo's claims that it is not, plaintiffs are free to renew their motion to compel and seek relief for Wells Fargo's failure to provide the information sought.

J.S.M.